Rebecca Cambreleng, OSB No. 133209
rebecca@workplacelawpdx.com
Ashley A. Marton, OSB No. 171584
ashley@workplacelawpdx.com
**CAMBRELENG & MARTON LLC**
3518 S Corbett Ave
Portland, Oregon 97239
Telephone:  503-477-4899
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON
## Portland Division

| | |
|---|---|
| **CYNTHIA YOUNG BOLEK,** an individual, **ASHLEY BUTLER**, an individual, and **CHERON GOCHENOUR**, an individual, | Case No.  3:23-cv-1121 |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| **CITY OF HILLSBORO,** a public entity, | |
| Defendant. | |

### NATURE OF THE ACTION

1.      This is an action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. alleging sex discrimination and retaliation for opposition to gender discrimination, FMLA retaliation and interference pursuant to 29 U.S.C. § 2601 et seq., and violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(4).

2.      Plaintiffs also bring state law claims for violation of the Oregon Equality Act

prohibiting sex discrimination in employment, ORS 659A.030(1)(a); hostile work environment based on sex pursuant to ORS 659A.030(1)(a), retaliation under ORS 659A.030(1)(f), whistleblower retaliation pursuant to ORS 659A.199 and 659A.203, protected medical leave interference and retaliation, ORS 659A.150 *et seq*., and disability discrimination pursuant to ORS 659A.112, all pursuant to the court's supplemental jurisdiction.

JURISDICTION AND VENUE

3.      This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331.

4.      The court has jurisdiction over plaintiffs' state law claims set forth in this complaint pursuant to its supplemental jurisdiction to hear related state law claims under 28 U.S.C. § 1367(a). Both the federal and state claims alleged herein arose from a common nucleus of operative fact, the state action is so related to the federal claim that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

5.      The employment practices described herein are alleged to have been committed in the District of Oregon.

PARTIES

6.      Plaintiff **CYNTHIA YOUNG BOLEK (BOLEK)** is a female resident and citizen of the state of Oregon, who was at all material times employed by defendant. At all material times, she was an employee for the purposes of the claims set forth herein.

7.      Plaintiff **ASHLEY BUTLER** is a female resident and citizen of the state of Oregon, who was at all material times employed by defendant. At all material times, she was an

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

employee for the purposes of the claims set forth herein.

8.      Plaintiff **CHERON GOCHENOUR** is a female resident and citizen of the state of Oregon, who was at all material times employed by defendant. At all material times, she was an employee for the purposes of the claims set forth herein.

9.      Defendant **CITY OF HILLSBORO** ("Hillsboro") is a public entity. The **HILLSBORO POLICE DEPARTMENT** ("HPD") is a department or division of Hillsboro. At all material times, Hillsboro employed 50 or more employees and was and is an employer and/or person for the purposes of the claims set forth in this complaint.

### PROCEDURAL REQUIREMENTS

10.     Plaintiffs timely filed their administrative complaints with the Oregon Bureau of Labor and Industries and the Equal Employment Opportunity Commission.

11.     Plaintiffs have timely satisfied all administrative prerequisites, if any, to the filing of the statutory claims set forth in this complaint.

### FACTUAL ALLEGATIONS COMMON TO ALL PLAINTIFFS

12.     Plaintiff Bolek began working for HPD in 2001. She was promoted to Support Services Division Manager and became a member of the Police Department Executive Team around 2007.  One of her areas of responsibility included oversight of the Police Records Division.

13.     Plaintiff Gochenour was hired in 2016. She was recruited from the Washington County Sheriff's office by Leah Turner who worked in conjunction with her on a multi-agency, multi-state project transitioning member agencies from the Portland Police Data System (PPDS) which is a law enforcement records management system to a new multi-agency records

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

management system and was impressed by her abilities.

14.    Plaintiff Gochenour was hired as the HPD Records Manager managing more than 15 people on a 24/7 basis and reported to Plaintiff Bolek.

15.    There were no concerns with Plaintiff Gochenour's work, and she was promoted in July 2020 to a Police Programs and Support Manager.

16.    In approximately 2017, the female Administrative Support Supervisor improperly used an internal law enforcement data system to view personal information of a civilian without authorization. Historically, improper use of the system to view information had resulted in a written reprimand. However, the female employee was instead forced to resign in lieu of termination and under the threat of a criminal charge for her unauthorized use.

17.    Plaintiff Butler was then hired in the Administrative Support Supervisor role in March 2018.

18.    Plaintiff Butler also reported to Plaintiff Bolek.

19.    Shortly after Plaintiff Butler's hire, Mike Leader, then a police sergeant or lieutenant, improperly used an internal law enforcement data system to view information about an open criminal investigation by Tigard police involving a family member. This is a violation of several policies and regulations, including potential interference with an open criminal investigation by a separate entity. Leader was put on administrative leave. However, he was not forced to resign in lieu of termination to avoid potential prosecution and was allowed back into his position with only a written reprimand.

20.    While gender discrimination has always been present at HPD, the public and blatant disparity in treatment between Leader and a female employee who engaged in the same

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

behavior was a signal that men could get away with behavior that women could not.

21.     Once Leader was reinstated, he was quickly promoted through additional ranks to the position of Deputy Chief (DC).

22.     DC Leader and Chief Jim Coleman then promoted Craig Allen to Commander in 2020.

23.     Once Cmdr. Allen was promoted, he fostered an atmosphere of discrimination, hostility, divisiveness, and retaliation against anyone who spoke up against him.

24.     For example, Plaintiff Bolek spoke to DC Leader and Chief Coleman of her concerns of Cmdr. Allen's previous failure to follow administrative and procedural rules related to the purchase of ArmorerLink, a firearm management system for law enforcement. Upon information and belief, Cmdr. Allen was counseled, but no discipline was imposed.

25.     At this same time, Plaintiff Butler discovered that starting with Cmdr. Allen's promotion to commander, he had been travelling frequently for his secondary employment with Force Science, but he had not reflected the time off for travel that was not HPD related on his timesheets.

26.     Plaintiff Butler relayed this to Plaintiff Bolek and both women reported the issue to DC Leader.  DC Leader dismissed the concerns and told Plaintiff Bolek he was not going to review Cmdr. Allen's use of work time for secondary employment.

27.     DC Leader told Plaintiff Bolek that he was "upset" that Plaintiff Butler and Plaintiff Bolek had brought this to his attention, as HPD and Force Science had a mutually beneficial relationship, and he did not want to upset that.

28.     Plaintiff Butler again reported to Plaintiff Bolek that Cmdr. Allen was

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

disregarding timesheet, payroll, light duty policies and law regarding the patrol division. Plaintiff Butler brought these concerns to Cmdr. Allen, who dismissed them.

29.     Plaintiff Bolek then brought those concerns to DC Leader, who told Plaintiff Bolek that he knew of these concerns because he had helped Plaintiff Butler with a few issues with Cmdr. Allen approving payroll that was not allowed by policy and likely in violation of law. He stated it would shed a "negative light" on HPD if discovered by city auditors.  DC Leader told Plaintiff Bolek that he had told Cmdr. Allen to "knock it off" and would follow up with Plaintiff Butler.

30.     When COVID hit, several decisions were made about staffing and building access by HPD leaders that did not sit well with a handful of employees.

31.     As policing was considered an essential service, most employees were still required to come into the building. For security of records personnel and the sensitive and confidential nature of records within the records division, it can only be accessed through a key card system that logs the identification of person(s) entering the secured area. To reduce transmission and keep as many records personnel as safe and healthy as possible, DC Leader, with input from Plaintiffs Bolek and Gochenour, decided to further restrict access to the records division.

32.     DC Leader sent out via email a directive restricting access to the records division except for certain individuals.  This directive was also discussed with command level personnel at meetings that included both sworn officers and civilian personnel held primarily through video meetings occurring during COVID. Everyone was aware that this restriction was in place.

33.     DC Leader's directive to restrict access to the records division also was

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

problematic in that the coffee machine was removed from the records division, which was often

an excuse for males coming into records to get coffee regardless of there being other coffee

machines located in the police department and a Starbucks located directly across the street.

This caused several employees, primarily male, to be unhappy with the directive.

34.     DC Leader had Plaintiff Gochenour send out an email to patrol sergeants and

lieutenants to let them know of these decisions, and to remind them that there were some

medically vulnerable employees working in records, including one individual in treatment for

stage 4 cancer.  DC Leader also required the purchase of and placement of a sign at the entries

of the records division stating the records division was closed.

35.     At least two male patrol staff took it upon themselves to ignore the directives

about entering the records division and would continuously enter without authorization.

36.     DC Leader refused to hold the male patrol officers accountable for repeated

violations of these rules, leaving it to Plaintiff Gochenour to remind patrol supervisors and

Cmdr. Allen that it was unacceptable and in violation of the Office of the Chief's directive sent

by DC Leader to enter the records division.

37.     Plaintiff Gochenour received complaints from records division staff and learned

that a male police sergeant had entered the records division more than 100 times after the

directive sent by DC Leader.

38.     Cmdr. Allen told Plaintiff Gochenour that he would not hold the patrol sergeant

accountable for the more than 100 violations unless she held records specialists who opened the

records door to officers equally accountable.

39.     Plaintiff Gochenour reported this to Plaintiff Bolek.  Plaintiff Bolek reported this

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

to DC Leader, stating that Cmdr. Allen's position was concerning as the female civilian records division staff felt compelled to open the door for the male officers.

40.     Plaintiffs Gochenour and Bolek told DC Leader that they were going to file a formal complaint for disparate treatment if Cmdr. Allen did not hold the patrol sergeant accountable for his conduct.  DC Leader asked Gochenour and Bolek to hold off on their complaint. DC Leader later told Bolek and Gochenour he had ordered Cmdr. Allen to issue a written reprimand to the male police sergeant. Plaintiff Bolek told Leader that a written reprimand was wholly inequitable for the more than 100 deliberate violations of the directive, where a similarly situated female employee had been issued a written reprimand for just one violation of a directive.

41.     Then, on July 18, 2020, Officer Marco Ramirez sent an email to his supervisor and Plaintiff Gochenour's supervisor that he had "heard" complaints about Plaintiff Gochenour.

42.     Ofc. Ramirez took it upon himself to "investigate", interviewing several records personnel on how they felt about Plaintiff Gochenour's leadership without legal authority to do so and in violation of department policies.

43.     This led to an 8-month investigation of Plaintiff Gochenour that was closed as unfounded in February 2021.

44.     While this investigation was ongoing, several employees made statements that were inconsistent based on documentation, and none of those employees were investigated or held accountable.

45.     During Plaintiff Gochenour's ongoing "investigation," Ofc. Ramirez again took it upon himself to use his body worn camera (BWC) to illegally record a female sergeant

CAMBRELENG & MARTON LLC
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

without her knowledge or consent as part of another "investigation" by him, which violated department policies and law.

46.     When Plaintiff Gochenour complained to DC Leader that Ofc. Ramirez was abusing his police authority and was not being held accountable, yet she was being dragged through an 8-month investigation for non-policy violations, DC Leader said he couldn't hold Ofc. Ramirez accountable for his actions against the female sergeant because DC Leader had not held Ofc. Ramirez accountable for the investigation of Plaintiff Gochenour.

47.     In 2020, HPD elected to end its long-term participation in a county-wide towing contract with Washington County. Plaintiff Gochenour, supported by Plaintiff Bolek at the direction of the city manager's office and police leadership (including DC Leader), worked for months to develop and implement a city of Hillsboro towing contract. A decision point of the contract was not to utilize a professional dispatch service known as "Tow-Desk".  Instead, police officers and city staff would simply call the primary tow company 24 hours per day if a tow was needed.

48.     In early January 2021, Cmdr. Allen decided that he did not want to follow the new "officer call process" to request a tow, complaining to Plaintiff Gochenour that officers were too busy. Cmdr. Allen called Plaintiff Gochenour demanding that Gochenour allow officers to use "Tow Desk". Plaintiff Gochenour tried to explain to Cmdr. Allen that HPD could not use "Tow Desk," as the city did not have a services agreement with them for dispatch services within the city's new towing contract. Plaintiff Gochenour tried repeatedly to calm Cmdr. Allen, who raised his voice and made rude comments and ordered her to violate the city's towing contract and city services agreement process and immediately begin use the old dispatch

CAMBRELENG & MARTON LLC
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

services.

49.    Plaintiff Gochenour told Cmdr. Allen that she was going to report his behavior to DC Leader, and he told her to "go ahead" and report him.

50.    Plaintiff Gochenour brought this to Plaintiff Bolek, who reported Allen's behavior to DC Leader, telling him that Cmdr. Allen's behavior was outside social and professional boundaries.  DC Leader stepped in to change the directive but did not reprimand or in any way discipline Cmdr. Allen for his conduct.  Instead, DC Leader secretly apologized to Gochenour for Allen's hostile and verbally abusive behavior directed at her.  DC Leader told Plaintiff Bolek and Plaintiff Gochenour that he would handle Allen and explain to him that a services contract was required.

51.    Plaintiff Bolek told DC Leader that Cmdr. Allen's hostility was increasing and Plaintiff Gochenour was becoming fearful of Cmdr. Allen's behavior toward her.  Plaintiff Bolek told DC Leader that Cmdr. Allen's hostile and verbally abusive behavior to Plaintiff Gochenour could not continue, and he had a duty to stop it.

52.    Instead of holding Cmdr. Allen responsible, DC Leader publicly praised patrol leadership for the transition back to Tow Desk, refusing to clarify that the original contract change had been approved by DC Leader and Chief Coleman. This created a further chasm between patrol and Plaintiff Gochenour as she was now seen as the person who tried to take Tow Desk from patrol.

53.    Plaintiff Gochenour faced increased comments and derision from patrol after DC Leader's announcement. She reported this to Plaintiff Bolek and DC Leader, and in response, DC Leader told Bolek and Gochenour that he would not correct the misinterpretation

CAMBRELENG & MARTON LLC
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

of the contract issue being Plaintiff Gochenour's responsibility, because it would require that he assign fault to the previous male patrol commander who had not done his job.

54.    Instead, DC Leader privately apologized to Plaintiff Gochenour.  Plaintiff Gochenour told DC Leader that his actions were inequitable and damaging to her reputation. Plaintiff Bolek later told DC Leader that allowing a message of the "males fixed/corrected the mistake" was sexist by not giving credit to a female employee in order to preserve the reputation of a male employee.

55.    Plaintiff Bolek warned DC Leader that if he did not stop Cmdr. Allen's discriminatory and abusive behavior toward women, that she would report it to Human Resources and the Bureau of Labor and Industries (BOLI).

56.    In response, Plaintiff Bolek met with DC Leader and Chief Jim Coleman regarding Cmdr. Allen's behavior. DC Leader assured Plaintiff Bolek that he would further instruct Allen on appropriate behavior in the workplace and treatment of Plaintiffs Bolek, Gochenour, Butler, and other women in the workplace.

57.    While this was going on, in 2020 it was discovered that body worn camera (BWC) video from a fatality had been improperly catalogued and subsequently destroyed.  Due to this, Plaintiffs Gochenour and Bolek told DC Leader that the BWC categories needed to include an appropriate code for officers to save video involving fatalities.

58.    DC Leader instructed Bolek to move forward and advise Cmdr. Allen of the needed changes. Cmdr. Allen did not agree with Plaintiff Bolek and refused to make the change, stating he did not care about the destroyed video.

59.    Plaintiff Bolek reported Cmdr. Allen's demeaning tone and hostile behavior and

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

his unwillingness to follow through with the change. DC Leader said he would talk with Cmdr. Allen regarding his behavior and get it corrected.

60.     DC Leader again privately apologized for Cmdr. Allen's behavior to Plaintiff Bolek, making excuses for Cmdr. Allen's behavior.

61.     Plaintiff Bolek told DC Leader that he was failing to stop Cmdr. Allen from directing his verbally abusive challenges and bullying behaviors at women when they did not agree with him, as had been promised in the meeting with Chief Coleman.

62.     In late 2020, HPD made the decision to move the BWC program from the patrol division, which was under the direction of Cmdr. Allen, to the Support Services Division, under the direction of Plaintiff Bolek.

63.     DC Leader assigned the BWC program, and the current female project manager to Plaintiff Bolek effective January 1, 2021, because DC Leader told Bolek that Cmdr. Allen did not want to "deal with" the female project manager.

64.     Once assigned, DC Leader told Plaintiff Bolek to discipline the female project manager for poor performance related to BWC program oversight. Plaintiff Bolek refused, stating that it would be inequitable to hold the female project manager accountable for work performance deficiencies when higher ranking male leaders of the program were ultimately responsible for the program and were not being held equally accountable.

65.     DC Leader told Plaintiff Bolek that she would be provided an "audit" of the BWC program that was being completed by a patrol lieutenant and the project manager assigned to BWC.  DC Leader assigned Plaintiff Bolek to identify issues with the BWC program, review the audit, and to make recommendations to him for program correction and

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

compliance with best practices and law.

66.     Plaintiff Bolek was already aware of some BWC program concerns previously referred to the patrol division from the records division and police evidence division which she also had oversight of. She was also aware that a BWC system upgrade was supposed to have been completed under Cmdr. Allen but had not taken place. Plaintiff Bolek reported to Cmdr. Allen her concerns with the upgrade and in response, Cmdr. Allen verbally harassed Plaintiff Bolek.

67.     Plaintiff Bolek filed a complaint with DC Leader based on Cmdr. Allen's verbal harassment and the issues with the BWC upgrade which DC Leader knew was a failure of Cmdr. Allen.

68.     Plaintiff Bolek told DC Leader that she planned to file a formal complaint with Hillsboro as Cmdr. Allen's hostile behavior was not being reigned in after multiple promises by DC Leader that he would "handle" it. DC Leader made additional promises and Plaintiff Bolek held off on the formal complaint due to those continued promises.

69.     Soon after the BWC program was given to Plaintiff Bolek, she met with Plaintiff Gochenour, who advised her that there were ongoing issues with BWC video that had not been uploaded, and requests from the district attorney, outside agencies, and civilians that had gone unanswered because patrol supervisors and leadership did not make sure the video was uploaded from patrol officers and properly catalogued for disclosure.

70.     By May of 2021, Plaintiff Bolek had brought to DC Leader's attention large failings in the BWC program, including improperly catalogued videos, video footage that was not uploaded, and videos uploaded after a significant delay, impacting compliance with

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

evidence production and public record law.

71.     She also reported that in once instance, HPD received contact from the Municipal Court due to a defendant insisting that the Hillsboro Police Officer who had issued a citation was wearing a body worn camera, and HPD denied its existence. Plaintiff Gochenour inadvertently discovered the existence of the video while engaged in other work after HPD had already denied its existence.

72.     In May 2021, Plaintiff Bolek met with DC Leader to discuss findings of the BWC audit.  Plaintiff Bolek emphasized to DC Leader that the department could not validate that it was providing BWC video as required by law and that there were additional instances of "missing" video resulting in HPD not providing required discovery.   Bolek also told DC Leader that not only was HPD unable to validate evidence production, it also could not validate that the DA's office was receiving the required BWC to properly evaluate cases for prosecution.

73.     DC Leader told Bolek that he would work with Cmdr. Allen to correct the deficiencies in the patrol division. Bolek told DC Leader that she was gravely concerned that HPD was not providing exculpatory evidence as required by law and that the District Attorney's Office needed to be notified.

74.     DC Leader told Bolek that he would review the matter and for her to move forward with recommendations with his full support. Plaintiff Bolek told DC Leader that she was concerned because Cmdr. Allen and patrol leadership were not rectifying the weekly reports of missing BWC video.   DC Leader expressed his frustration with Cmdr. Allen, but said he was "popular with the troops," so he would again not be held accountable.

75.     In March 2021, DC Leader told Plaintiffs Bolek and Gochenour to discipline a

CAMBRELENG & MARTON LLC
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

female records specialist for excessive "socializing with professional staff." Plaintiff Gochenour objected to unfair treatment of the records specialist in issuing discipline when the male patrol officers that had been in the records division were not held accountable for their conduct of violating entry restrictions or "hunting and sniffing" around the females in the records division.

76.     Plaintiff Gochenour and Plaintiff Bolek also told DC Leader that two male police sergeants that had been in the police administration disrupting staff had not been held accountable for their conduct.

77.     DC Leader ordered Plaintiff Gochenour to hold the female records specialist accountable anyway.

78.     In the summer of 2021, after DC Leader told Plaintiff Bolek he advised Cmdr. Allen to follow policies, Plaintiff Butler reported to Plaintiff Bolek that Cmdr. Allen's behavior toward her had escalated and he was being rude, dismissive, and directing her to violate polices, which was causing her extreme stress and anxiety.

79.     Plaintiff Butler reported to Plaintiff Bolek that she was being questioned by city payroll regarding patrol division timesheets and no one was taking action to stop Cmdr. Allen or other males under his authority from violating policies and payroll laws.

80.     Plaintiff Butler told Plaintiff Bolek she was fearful of Cmdr. Allen and concerned that she would be investigated by HPD and blamed by the city or auditors for the payroll violations.

81.     Plaintiff Butler told Plaintiff Bolek that she had reported Cmdr. Allen's behavior to DC Leader several times, yet Cmdr. Allen's behavior toward her had not stopped and his behavior toward her had only worsened after her reports to DC Leader.

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

82.     On August 21, 2021, a female civilian records specialist opened the secured records door for her husband, a male police officer, bypassing all other controls to help him with his work. At the time, there was an employee who had stage 4 cancer working in the records division, which had been made widely known, as well as other records specialists who were medically vulnerable.

83.     It was soon after learned that the husband officer had COVID and brought it into the records division when he and his wife bypassed security, which was a violation not only of the rules pertaining to entry, but the well-known rules to keep the medically fragile employees safe.

84.     Plaintiff Gochenour reported the incident to Plaintiff Bolek, Cmdr. Allen, and DC Leader, and they found that this incident violated department policies. During discussions regarding the violations of policy, it was decided and agreed that both the sworn officer husband and the records specialist wife would be held equally accountable.

85.     Plaintiff Gochenour then issued a counseling memo to the wife, which went into her personnel file and sent a copy to Cmdr. Allen. Instead of following through on the agreement, Cmdr. Allen decided to issue a "same day summary" which is non-disciplinary.

86.     Plaintiffs Gochenour and Bolek called SueLing Gandee to complain, and then went to DC Leader, who refused to correct the situation and allowed Cmdr. Allen to violate the agreement DC Leader approved and hold the male to a lower standard than the female.

87.     After being spoken to by DC Leader, in early October 2021, Allen publicly confronted Plaintiff Gochenour in the lunchroom about the situation, was verbally abusive and physically cornered her to accuse her of investigating a male patrol sergeant.

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

88.    Plaintiff Gochenour left that encounter and made a report to HR about Cmdr. Allen for his treatment of her, failure of DC Leader to hold Allen accountable and failure of leadership in general to treat men and women equally.

89.    This began an almost two-year long campaign of retaliation against Plaintiff Gochenour, as she had gone outside the department to report her concerns, putting a target on her back.

90.    Later that day, DC Leader called Plaintiff Gochenour into his office and began to yell at her for conducting her own "investigation" and telling her that Cmdr. Allen told him and Chief Coleman that she had had a meeting with a sergeant regarding the mutual discipline. DC Leader told Plaintiff Gochenour that her actions were inappropriate and a violation of the department policy. Plaintiff Gochenour calmly pointed out that she was not investigating anything, she was only trying to determine how the male received lesser accountability than his wife when DC Leader had assured her that they would receive equitable accountability, and she would not be attacked by Cmdr. Allen, patrol, or the police association for doing her job.

91.    Plaintiff Gochenour also reminded DC Leader that her actions were within department policy and the directive she had received, unlike Ofc. Ramirez who had conducted his own investigations of her and another female and was never held accountable.

92.    During that same time period, DC Leader told Plaintiff Bolek that he did not want to hire a female recruit, but she "checked all three boxes – female, lesbian, Hispanic" and without solid reasoning, he would have to hire her because HR had become overly critical of hiring in the police department with the city's Diversity, Equity and Inclusion (DEI) initiatives.

93.    DC Leader supported a sexist and hostile environment for women.  He openly

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

allowed mocking and belittling of women.  In one instance, there was a meeting where inappropriate statements were made about Plaintiff Gochenour by a male employee and DC Leader did not do anything to address it despite being in the meeting.

94.    When Plaintiff Bolek learned of the comment, she went to DC Leader, who made the assumption that a female sergeant had told her and called her a "tattle tale". He then privately apologized to Plaintiff Gochenour but did not hold the male officer accountable for his conduct, which violated HPD and Hillsboro policies.

95.    Chief Coleman participated in allowing DC Leader to fail to protect women in the workplace.  DC Leader openly mocked a female sergeant in a text message that included Plaintiff Bolek and Chief Coleman, stating that he needed to put his sensitive hat on to speak with the female sergeant.  Chief Coleman then supported DC Leader's sexist comment back in text, suggesting that Leader needed to put on his body armor.

96.    In July 2021, DC Leader assigned work to Plaintiff Gochenour outside of her job description because Cmdr. Allen and Lt. Potter had failed to address an interagency agreement compliance issue.  Despite Plaintiffs Gochenour and Bolek telling DC Leader that it was not Plaintiff Gochenour's responsibility and she lacked oversight of the agreement, DC Leader assigned the work to Plaintiff Gochenour instead of a male lieutenant and Cmdr. Allen to rectify.

97.    Plaintiff Gochenour complied with DC Leader's order. Instead of DC Leader holding the male lieutenant and male commander accountable, he sent her a text messaging stating "Some people just don't get it.  Really. What can you do.  Buy em books and send em to school, then this happens…."

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

98.    DC Leader again privately thanked Plaintiff Gochenour, yet deflected accountability of male employees of higher rank than Plaintiff Gochenour for failing in their work performance.

99.    Around this same time, in September 2021, Plaintiff Gochenour was granted intermittent FMLA leave.

100.    Around October 1, 2021, Plaintiff Bolek met with DC Leader regarding the issues with BWC, gender discrimination, and retaliation that she felt was occurring against females who spoke up in HPD.

101.    DC Leader stated that the officers felt like there was "too much process," as in policies and process they had to follow, and that he would not be making any changes to combat the discrimination occurring, or hold Cmdr. Allen accountable for patrol failures, policy or law violations occurring with the use of BWC.

102.    On October 2, Plaintiff Bolek sent an email to DC Leader and Chief Coleman to reiterate all her complaints that she had discussed with DC Leader and his statements that he would not address them.

103.    Plaintiff Bolek said he was leaving her no choice but to leave HPD after two decades of service because she couldn't take the continued retaliation and discrimination against herself and other women, and because HPD was repeatedly violating the law with the BWC program and officers using BWC in violation of the law were not being held accountable.

104.    Based on the actions of DC Leader and continued failure of leadership, Plaintiff Bolek felt she had no other option than to leave HPD after 20 years of service.

105.    On October 3, Plaintiff Bolek gave notice of an expected retirement of January 1,

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

2022.

106.     This was based on conduct engaged in by Hillsboro as described herein above with the purpose and intent to cause Plaintiff Bolek to quit or with reckless disregard that such conduct would cause her to quit.

107.     On October 8, Plaintiff Bolek received a phone call from DC Leader and Chief Coleman advising her that she was being placed on paid administrative leave until her retirement.  Plaintiff Bolek objected in writing to the City of Hillsboro and stated that this type of paid administrative leave had never been given to a male HPD employee who had given notice of an expected retirement. She stated she believed it was retaliatory for her complaints.

108.     DC Leader required Plaintiff Bolek to turn in her badge, phone, laptop, and denied her access to any HPD facility that wasn't open to the public. Bolek was also ordered to remain available to the police department Monday through Friday, 9am-5pm on her personal phone and through her personal email in case someone had questions about work. Non-compliance would result in discipline.

109.     October 10, 2021, Plaintiff Bolek make a formal HR complaint about being placed on administrative leave, including a complaint that males were not treated the same way and she believed her placement administrative leave was retaliation for her reporting.

110.     In response, Hillsboro began an investigation into the gender discrimination claims only and did not investigate any claims of retaliation or whistleblowing related to the BWC issues.

111.     Around October 13, Plaintiff Gochenour was notified that she would be reporting to DC Leader.

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

112.    On October 15, DC Leader told Plaintiff Gochenour that several areas of her job duties surrounding risk management and production of discovery related to civil and employment litigation was being removed and reassigned to a male employee who had no experience and would have to learn policies, public records law, discovery and general rules of production.

113.    The removal of Plaintiff Gochenour's job duties was then spread around HPD, solidifying her demotion.

114.    In early February 2022, Plaintiff Gochenour was told she would now be reporting to Leah Turner.  Ms. Turner had very little supervisory experience in records management, thus resulting in Plaintiff Gochenour having to provide Ms. Turner with training.

115.    On February 10, Plaintiff Gochenour met with Sylvia Edgar to formally complain of retaliation.

116.    At this same time, around late January early February 2022, Plaintiff Butler saw the trend in discrepancies around pay for male and female employees of HPD and brought her concerns about pay equity and disparate treatment of females by HPD to her now supervisor, Kim Basney. This was during a meeting where they were discussing the reorganization of the department after Ms. Bolek's retirement, when her position of Support Services Division Manager was dissolved, and an additional Lieutenant position was created instead.

117.    During the same meeting with Ms. Basney, Plaintiff Butler asked Ms. Basney when the new pay plan was going to be released with her and Ms. Turner's new pay scale, as payroll was a primary role of her position, and she tracked all changes to ensure proper wage payments for police employees. Ms. Basney told her that DC Leader had indicated that

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

nonsworn females, regardless of skill or experience level would not be elevated to the same position as sworn male employees in the future.

118.    When Plaintiff Butler stated her concerns to Ms. Basney regarding gender discrimination, Ms. Basney stated she had also fought for a pay raise with DC Leader in her current role as well as her newly classified role.

119.    Shortly thereafter, Plaintiff Butler was approved for protected leave, but was required to stay at work two additional workdays to complete police payroll as she was expected to make herself available to process payroll regardless of leave status since she was the only employee with contemporary police payroll system experience.

120.    On February 28, Plaintiff Gochenour reported to Lisa Colling, head of Hillsboro HR and Chief Coleman that she would be filing a BOLI complaint due to ongoing retaliation.

121.    On March 25, Plaintiff Bolek filed her BOLI complaint.

122.    On April 18, more than one year after Plaintiff Gochenour had initially reported verbal harassment and hostile working environment by Cmdr. Allen, she was notified by Ms. Colling that an outside investigator was being hired to investigate allegation by her and Plaintiff Bolek.

123.    On April 25, Plaintiff Butler returned to work from her FMLA leave.

124.    The next day, Plaintiff Butler had a meeting with her supervisor where she was told that the department was going through a restructuring, including removing all of her supervisory responsibilities. In addition to her current payroll position, she was also told she would have to take on a significant workload that had been performed by sworn police supervisors since 2009, who had received significant overtime compensation that she was not

CAMBRELENG & MARTON LLC
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

going to receive as an exempt employee.

125.    Plaintiff Butler was advised by Ms. Basney that this change had occurred during her FMLA leave and she had already spoken with Plaintiff Butler's subordinate employee. Ms. Basney said that the change had already been made, but the city would document the change as occurring after her return from FMLA.

126.    Ms. Basney went on to inform Butler that several meetings regarding reassignment of Sgt. Andersen's Telestaff duties to her had taken place while she was on protected leave. Ms. Basney said that these meetings included her, Cmdr. Allen, Commander Mike Rouches and Sgt. Sommer Andersen.

127.    Plaintiff Butler was also told that even though she needed significant training to perform the work the male police supervisor who was supposed to take over the assignment didn't want to do that much work and it was being assigned to her. Plaintiff Butler was also told that due to her having taken FMLA leave, the leave reduced the amount of time available for her to be trained, however the work would still be reassigned to her.

128.    On May 5, Plaintiff Butler requested a meeting with Chief Coleman to object to her demotion and the new program responsibilities, as she believed they were retaliation for her reporting issues about Cmdr. Allen and in response to her FMLA leave.

129.    Chief Coleman dismissed her concerns, and due to the stress of the retaliation, Plaintiff Butler went back on FMLA leave. During her leave, Ms. Basney shut down Plaintiff Butler's access to her city email, and had all the emails forwarded to herself, all actions which were not standard practice for employees on protected medical leave.

130.    On May 12, Plaintiff Gochenour reported additional retaliation to Ms. Colling.

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

131.    During this same time, Plaintiff Gochenour also informed Ms. Colling, DC Leader and others that she needed ADA accommodation including being allowed to take notes during meetings.

132.    On July 11, Plaintiff Butler returned from FMLA leave to the new position. That day, Plaintiff Butler's supervisor engaged in inappropriate conduct making Plaintiff Butler feel like she was being retaliated against for the additional FMLA leave and for reporting her concerns to Chief Coleman.

133.    In addition, while Plaintiff Butler was given access to her city email upon her return, Ms. Basney failed to disclose that she had forwarded a copy of all incoming emails and continued to read all of Plaintiff Butler's email for several days after her return.

134.    On the evening of July 12, Plaintiff Butler told her supervisor in response to a meeting that Butler was required to attend, that she would not meet alone with Ms. Basney anymore and would only attend the meeting if an HR representative was present. Ms. Basney required Butler to meet anyway and said instead of HR, police supervisor Leah Turner would be present at the meeting.

135.    On July 13, Plaintiff Gochenour filed a complaint with City Manager Robby Hammond regarding the failure to stop or even respond to the ongoing retaliation she was experiencing in the workplace.

136.    On or around July 15, Plaintiff Butler also filed a formal complaint to HR of retaliation based on her previous reporting of gender discrimination, pay equity issues, fiscal mismanagement, staffing issues, for taking protected leave, and being forced to do the work of two jobs without equivalent pay.

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

137.    On July 18, based on conduct engaged in by Hillsboro as described herein above with the purpose to cause Plaintiff Butler to quit or with reckless disregard that such conduct would cause her to quit, Plaintiff Butler felt she had no choice but to resign her position as the demotion to the new position was designed to make her fail, and she was being retaliated against with no accountability for those engaging in illegal behavior.

138.    Between September 20 and October 20, 2022, Plaintiff Gochenour made several reports to Chief Coleman, Ms. Colling, and City Manager Hammond of each instance of an FMLA violation by Ms. Turner. She received no responses.

139.    On September 29, Ms. Turner issued Plaintiff Gochenour a counseling memo.

140.    On November 9, Plaintiff Gochenour made another report of another instance of FMLA interference by Ms. Turner.

141.    Within an hour, Chief Coleman responded by stating: "The Police Department, Human Resources, and the City Manager's Office have and continue to dedicate time and effort to the matters you have brought forward. The many daily responsibilities we all have require attention as well. The City has been responsive in proportion to these competing demands and would take action if it were deemed necessary at the conclusion of a careful review."

142.    Plaintiff Gochenour responded that she was concerned by his email, and asking why she was being treated differently than other employees on FMLA leave. She received no response. As of the date of this complaint, there has been no investigation or any response to the FMLA interference and retaliation claims by Plaintiff Gochenour.

143.    On November 10, Plaintiffs Bolek and Gochenour received a response from HR that their complaints of gender discrimination against Cmdr. Allen were not sustained.

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

144.    On November 14, Plaintiff Gochenour appealed the Sept. 29 counseling memo as being retaliatory to Chief Coleman and City Manager Hammond.

145.    As of the date of this complaint, no investigation into any claims of retaliation by any of the plaintiffs have been investigated or even responded to.

146.    On or around November 15, Plaintiff Gochenour reported to Leah Turner, City Recorder Amber Ames, Chief Coleman and City Manager Hammond her objection to being ordered by Leah Turner to destroy public records, specifically un-catalogued BWC videos, in violation of Oregon law.

147.    The next day, November 16, 2022, Plaintiff Gochenour was issued a written reprimand by Ms. Turner for alleged performance issues and was informed she was also under investigation by internal affairs for violations of "truthfulness" (IA 290). She was also informed that she was under investigation for retaliation against a subordinate employee, which would be handled by an outside HR investigator.

148.    Specifically, the IA investigation related to Plaintiff Gochenour's truthfulness in an email to an HR benefits employee asking for additional time to fill out her benefits paperwork as her supervisor, Ms. Turner, had not allowed her time before the window for benefits closed.

149.    On November 21, Plaintiff Gochenour was placed on paid administrative leave. As of the date of filing this complaint, Plaintiff Gochenour is still on paid administrative leave - 8 months later.

150.    On December 7, Plaintiff Gochenour was notified of a second IA investigation, this one into poor work performance and failure to follow directives (IA 291).

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

151.    During January and February 2023, Plaintiff Gochenour was subject to multiple investigatory meetings. For each of these meetings, she requested accommodation for her disability. The accommodation was granted.

152.    On March 28, Plaintiffs Gochenour and Butler filed administrative complaints.

153.    On April 7, Plaintiff Gochenour received a phone call from DC Leader and Lisa Colling that the HR investigation was not sustained, and she was cleared of any wrongdoing, and the IA 291 investigation was also not sustained.

154.    Plaintiff Gochenour received two written follow-up communications. In the "Notice of Investigative Closure" memo from Ms. Colling, she warned that if Plaintiff Gochenour were to return from her administrative leave, she had to conduct herself more professionally. This despite the finding by the investigator that Plaintiff Gochenour did not engage in retaliatory behavior.

155.    The written follow-up from DC Leader stated: "After reviewing the investigative file, it appears your need for extensive written communication regardless of the reason or task was a significant impediment to what should have been routine internal agency communication. This complicates and slows down the overall flow of work. Nevertheless, I cannot find by a preponderance of the evidence that your actions in this matter reached the threshold of violating policy 304.6.9."

156.    DC Leader in this statement is referring to Plaintiff Gochenour's ADA accommodation, suggesting that her disability formed part of the basis of the complaint against her. Nowhere in the written response does it mention Plaintiff Gochenour's disability or any accommodation.

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

157.    Moreover, the investigation into IA 291 was closed and found not sustained as of March 15, 2023, the date of the letter, but was not given to Plaintiff Gochenour until April 7, almost a full month later.

158.    On May 22, 2023, Plaintiff Gochenour was informed that IA 290 investigation was concluded through a Pre-Disciplinary Notice as DC Leader determined that her email to HR was untruthful. DC Leader wrote: "I have made a preliminary determination that termination of your employment is appropriate, and I am therefore contemplating such action."

159.    In a footnote, DC Leader added "The investigation suggests that you had difficulty communicating with Ms. Turner, and that your communication was primarily in writing. This was also noted in a previous investigation (2022IAP-291) that was 'not sustained."

160.    As of the date of filing this complaint, no final determination has been made as to Plaintiff Gochenour's termination.

## DAMAGES ALLEGATIONS

161.    As a result of the actions alleged herein, plaintiffs have and will continue to suffer economic damages. Plaintiffs are entitled to recover from defendant such lost wages and benefits of employment and other economic losses in such amount as may be established at trial.

162.    As a further result of defendant's actions alleged herein, plaintiffs have suffered and are entitled to recover for their noneconomic damages in an amount found to be appropriate by a jury based on the evidence presented at trial.

163.    Plaintiffs are entitled to such equitable and other relief in their favor on

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

such terms as the court may direct.

164.        Plaintiffs are entitled to recover their reasonable attorney's fees, reasonable expert witness fees, and other costs of the action to be paid by the defendant pursuant to 42 U.S.C. § 2000e-5(k); ORS 659A.885; and/or ORS 20.107.

## FIRST CLAIM FOR RELIEF

### (42 U.S.C. § 2000e-2(a) – Sex Discrimination)

### (All Plaintiffs against Defendant)

165.    Plaintiffs incorporates paragraphs 1 through 23, 30-40, 41-69, 75-77, 82-98, 109, 116-118, 132-137, 144-145, 154, and 158 as though fully set forth herein.

166.    All Plaintiffs identify as female.

167.    Defendant Hillsboro discriminated against plaintiffs in the terms and conditions of their employment as alleged herein in substantial motivating part due to their sex.

168.    Defendant Hillsboro knew, or should have known, of the ongoing and pervasive harassment by Cmdr. Allen and other male employees against Plaintiffs and did not take prompt, remedial action to stop the harassment.

169.    Defendant Hillsboro's actions violated 42 U.S.C. §2000e-2(a) and Plaintiffs are entitled to appropriate relief.

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

## SECOND CLAIM FOR RELIEF

### (ORS 659A.030(1)(a) et seq. – Sex Discrimination)

### (Plaintiffs Gochenour and Butler against Defendant)

170.    Plaintiffs incorporate paragraphs 1 through 23, 30-40, 41-69, 75-77, 82-98, 109, 116-118, 132-137, 144-145, 154, and 158 as though fully set forth herein.

171.    It is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions, or privileges of employment on the basis of an individual's race or national origin.

172.    Defendant discriminated against Plaintiffs in the terms and conditions of their employment as alleged herein in substantial motivating part due to plaintiffs' sex.

173.    Defendant's conduct as described herein is in violation of ORS 659A.030(1)(b).

## THIRD CLAIM FOR RELIEF

### (ORS 659A.030 – Hostile Work Environment)

### (All Plaintiffs against Defendant)

174.    Plaintiffs incorporate paragraphs 1 through 15, 17-18, 21-23, 56-61, 65-66, 78-91 and 93 as though fully set forth herein.

175.    Defendant subjected Plaintiffs to a hostile work environment based on their sex. Defendant engaged in a pattern and practice of ignoring and condoning harassment and discrimination against Plaintiffs due to their sex. The harassment was pervasive, severe, offensive, and outrageous.

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

176.     Defendant's actions had the purpose and effect of creating an intimidating, hostile, and offensive working environment based on Plaintiffs' sex, and had the effect and purpose of unreasonably interfering with Plaintiffs' work and wellbeing.

177.     Throughout the many complaints of harassment, DC Leader failed to properly investigate, failed to take appropriate action to prevent harm to Plaintiffs, and instead aided, abetted, and incited the harassment and discrimination against Plaintiff.

## FOURTH CLAIM FOR RELIEF

### (Retaliation ORS 659A.030(1)(f))

### (Plaintiffs Gochenour and Butler against Defendant)

178.     Plaintiffs incorporate and reallege paragraphs 1 through 15, 17-18, 21-23, 41-46, 55-64, 67-68, 75-91, 96-98, 100-118, 122-128, 130, 132-137, 144-145, 154 and 158 by reference as though set forth fully herein.

179.     It is an unlawful employment practice for any person to discharge, expel or otherwise discriminate against any other person because that person has opposed any unlawful practice under ORS Chapter 659A or has attempted to do so.

180.     Defendant discriminated against plaintiffs in the terms and conditions of their employment as alleged herein in retaliation for plaintiffs' opposition to and complaints and reports of discrimination due to gender which constitute violations of law, regulation, and rule.

## FIFTH CLAIM FOR RELIEF

### (Retaliation 42 U.S.C. §2000e-3(a))

### (All Plaintiffs against Defendant)

181.     Plaintiffs incorporate and reallege paragraphs 1 through 15, 17-18, 21-23, 41-46,

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

55-64, 67-68, 75-91, 96-98, 100-118, 122-128, 130, 132-137, 144-145, 154 and 158 by reference as though set forth fully herein.

182.    Plaintiffs resisted and opposed discriminatory actions directed toward them by defendant as alleged herein.

183.    Plaintiffs' complaints are protected opposition to discrimination under federal and state law.

184.    Because of plaintiffs' protected opposition, defendant engaged in conduct that would dissuade a reasonable worker from making or supporting a charge of discrimination in violation of 42 U.S.C. § 2000e-3(a).

## SIXTH CLAIM FOR RELIEF

### (Retaliation)

### (All Plaintiffs against Defendant)

### Count 1: ORS 659A.199

185.    Plaintiffs incorporate paragraphs 1 through ___ as though fully set forth herein.

186.    It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

187.    Plaintiffs in good faith made reports and complaints relating to violations as alleged herein which constituted protected conduct under ORS 659A.199.

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

188.    Defendant discriminated against Plaintiffs in the terms and conditions of their employment because of such protected conduct in violation of ORS 659A.199.

**Count Two: ORS 659A.203**

189.    Plaintiffs incorporate paragraphs 1 through ___, as though fully set forth herein.

190.    It is an unlawful employment practice for any public employer to take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of a violation of any federal, state or local law, rule or regulation or mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from the public employer's actions.

191.    Plaintiff's good faith reports and complaints of violations of federal, state or local law, rule or regulation or mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from the public employer's actions as alleged herein constituted protected conduct under ORS 659A.203.

192.    Defendant discriminated against Plaintiffs in the terms and conditions of their employment as alleged herein because of such protected conduct in violation of ORS 659A.203.

**SEVENTH CLAIM FOR RELIEF**

**(Medical Leave Interference and Retaliation – 29 U.S.C. §2615)**

**(All Plaintiffs against Defendant)**

193.    Plaintiffs incorporate paragraphs 1 through __ as though fully set forth herein.

194.    Plaintiffs are each an eligible employee as defined by 29 U.S.C. § 2611(2)(a).

195.    Defendant is an employer as defined by 29 U.S.C. § 2611(4)(a).

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

196.    Each Plaintiff properly requested leave and each Plaintiff's leave was granted.

197.    In response to plaintiff's use of protected leave, defendants discriminated against plaintiff in the terms and conditions of their employment as alleged herein.

198.    Defendants acted willfully and without reasonable grounds to believe that their acts were not a violation of 29 U.S.C. § 2615.

199.    Plaintiffs are entitled to recover their reasonable attorney's fees, reasonable expert witness fees, and other costs of the action to be paid by the defendant pursuant to 29 U.S.C. § 2617.

## EIGHTH CLAIM FOR RELIEF

### (Medical Leave Interference and Retaliation – ORS 659A.183/ORS 659A.030(g))

### (All Plaintiffs against Defendant)

200.    Plaintiff incorporates and realleges paragraphs 1 through ___ as though fully set forth herein.

201.    Plaintiff was an eligible employee as defined by ORS 659A.150(2) and not excluded from eligibility by ORS 659A.156.

202.    Defendant was a covered employer as defined by ORS 659A.153(1).

203.    In response to plaintiffs' protected medical leave, defendant discriminated and retaliated against them in the terms and conditions of their employment as alleged herein.

## NINTH CLAIM FOR RELIEF

### (Plaintiff Gochenour against Defendant)

### COUNT ONE:
### Disability Discrimination - Americans with Disabilities Act, 42 U.S.C. § 12112

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

204.    Plaintiff incorporates paragraphs 1 through ___ as though fully set forth herein.

205.    At all material times, plaintiff was a qualified individual with a disability in that she suffered an impairment that substantially affected one or more major life activities.

206.    Plaintiff at material times was a qualified individual with a disability due to her record of impairment.

207.    Defendant regarded plaintiff as a disabled person in that they acted against her based on her impairment or on an impairment defendant believed plaintiff possessed.

208.    Defendant and its agents discriminated against plaintiff in the terms and conditions of her employment and in placing Plaintiff Gochenour on administrative leave in substantial motivating part due to her disability, her record of a disability, or because it regarded her as a disabled person.

209.    Defendant's conduct as described herein is in violation of 42 U.S.C. § 12112.

**Count Two**

**(Disability Discrimination – ORS 659A.112)**

210.    Plaintiff incorporates and realleges paragraphs 1 through ___ by reference as though set forth fully herein.

211.    Plaintiff had at all material times a physical impairment that substantially limited one or more major life activities or was regarded as or perceived as having such physical impairments.

212.    Plaintiff is protected by statute as an individual with a disability due to her actual disability, because of her record of disability, and because defendant regarded her as disabled.

213.    Defendant discriminated against Plaintiff in the terms and conditions of her

Page 35 – **COMPLAINT**

employment based on her disability as alleged herein.

214.     Defendant discriminated against Plaintiff by taking adverse employment action against her and/or failing to engage in the interactive process and/or failing to make a reasonable accommodation in violation of this statute as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to:

1.     Declare defendants in violation of the statutes set forth in plaintiff's claims for relief;

2.     Order defendants to make plaintiff whole by providing compensation for non-economic losses in an amount as awarded by the court or a jury;

4.     Award plaintiff her costs of suit and reasonable attorney fees, costs, and expert witness fees;

5.     Order defendants to pay prejudgment interest and post-judgment interest on all amounts due to plaintiff as a result of this action, with interest at the prevailing rate; and

6.     Order such further or alternative relief in favor of plaintiff as the court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all questions of fact or combined questions of law and fact raised by this complaint.

//

//

//

**CAMBRELENG & MARTON LLC**
3518 S Corbett
Portland, Oregon 97239
Telephone: 503-477-4899

DATED August 1, 2023.

**CAMBRELENG & MARTON LLC**

By:      */s Rebecca Cambreleng*
Rebecca Cambreleng, OSB No. 133209
*Of Attorneys for Plaintiffs*